# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**February 23, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* J.W. and S.W.

No. 17-0826 (Mineral County 17-JA-7 and 8)

## MEMORANDUM DECISION

Petitioner Mother, K.P., by counsel Jeremy B. Cooper, appeals the Circuit Court of Mineral County's July 31, 2017, order terminating her parental rights to J.W. and S.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Max White, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2017, the DHHR filed an abuse and neglect petition against the parents alleging that the father physically abused both children and that petitioner failed to protect the children from the father's abuse. Specifically, the petition alleged that the father pinched, bit, hit, and burned J.W. on multiple occasions and hit one-year-old S.W. on the back with a wooden spoon on at least one occasion, leaving bruises. The DHHR also alleged that petitioner hit the children and witnessed the father abuse the children, but failed to protect them and allowed them to be subjected to further abuse. The petition further alleged that the father perpetrated physical abuse upon petitioner in the presence of the children. Petitioner waived her preliminary hearing.

In June of 2017, the circuit court held an adjudicatory hearing wherein neither petitioner nor the father presented any evidence or testimony. The DHHR presented the testimony of the maternal grandmother. She testified that J.W. told her that, "[m]y daddy beat me up." She also testified that she saw bruises on J.W.'s side and, when she asked J.W. how it happened, the child

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

stated, "[o]h, my daddy beat my ass with a spoon." She further testified that when she questioned petitioner about the injuries, petitioner stated, "[J.W.'s] fine. What stories is she telling you now?" The maternal grandmother also testified that petitioner called her one day very upset that the father kicked the family dog and that the dog was bleeding and required fifteen stitches.

In addition to the maternal grandmother's testimony, Sergeant Scott Huffman of the West Virginia State Police testified regarding his investigation of the abuse of the children. He testified that after his investigation, he charged the father with several counts of child abuse, stemming from striking J.W. in the face; striking her with a spoon, causing bruising; punching her in the stomach, back, and legs; and burning her face with boiling water. He also testified that petitioner was charged with child neglect because she allowed the father to perpetrate physical abuse upon her children. Finally, he testified that J.W. was terrified of her father, did not want to return home, and that he found no evidence that her disclosures regarding the abuse were fabricated or influenced by her maternal grandmother or anyone else.

Next, the nurse who conducted a physical examination of the children in April of 2017, after the allegations of abuse were made, testified that she observed a bruise on S.W.'s back, which she found suspicious due to its location. She did not observe any bruises on J.W. at that time, but reviewed pictures taken after she was burned on her cheek. Finally, a caseworker from Sarah's House Child Advocacy Center testified regarding her interviews with J.W. in April of 2017 and May of 2017. She testified that J.W. disclosed multiple acts of physical abuse by the father, including pinching her arms, burning her face with hot water, hitting her with a spoon in the back, and "beating her up" when she did her homework wrong. The caseworker testified that J.W. clarified that "beating her up" meant that the father punched her and smacked her face. She also testified that J.W. disclosed that petitioner sat on the couch as the father burned her face and stated, "[m]om didn't even stop it," referring to the abuse. J.W. also disclosed to the caseworker that she was afraid her little sister, S.W. was going to die when her paternal grandmother put her hand over S.W.'s mouth to silence her when her father was beating her mother. J.W. also told the caseworker about the incident in which the father kicked the family dog. The circuit court adjudicated petitioner as an abusing parent for failure to protect the children from the abuse perpetrated by the father

In July of 2017, the circuit court held a dispositional hearing wherein neither petitioner nor the father testified. A therapist who was working with J.W. testified that the child had exhibited several signs of trauma. She also testified that J.W. disclosed to her that although petitioner did not hurt her, petitioner witnessed a lot of the abuse by her father and did nothing to protect her. The therapist testified that it would not be in the best interests of the children to return to the home. A caseworker testified that petitioner and the father remained in a relationship and that neither one of them acknowledged the abuse to J.W. or any other form of abuse in the home and, due to that denial, there were no services that could assist them in reunification. The circuit court found that petitioner witnessed the father abuse the children, but did nothing to stop it or prevent it, and although petitioner may have also been abused by the father, her failure to report the abuse of her children demonstrates that she is unable to adequately protect her children from abuse and neglect. Further, the circuit court found that both petitioner and the father failed to admit to any abuse or neglect of the children and neither accepted responsibility for the abuse and neglect of the children, nor did they identify an abuser

of the children. Based on that evidence, the circuit court found no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination was in the best interests of the children. Ultimately the circuit court terminated petitioner's parental rights in its July 31, 2017, order.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in adjudicating her as an abusing parent rather than a battered parent because she was also abused by the father. However, petitioner did not raise this argument below, and so, we decline to grant relief in this regard. We have long held that, "when nonjurisdictional questions have not been decided at the trial court level and are then first raised before this Court, they will not be considered on appeal." *Whitlow v. Bd. of Educ. of Kanawha County,* 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993).

We find that the circuit court properly adjudicated petitioner as an abusing parent as the DHHR established substantial evidence that petitioner failed to protect the children by allowing the father to physically abuse them. The record on appeal shows that the father repeatedly abused J.W. by pinching, biting, punching, smacking, and burning her and that petitioner was aware of this abuse, but did not attempt to stop or prevent the abuse, nor did she report any of the abuse that occurred in the home. Additionally, the DHHR established evidence of J.W.'s disclosures to law enforcement, a nurse, and a therapist regarding the physical abuse perpetrated by her father and the circuit court found that her disclosures were credible. Pursuant to West Virginia Code § 49-1-201, "'[a]bused child' means a child whose health or welfare is being harmed or threatened by: (A) [a] parent, guardian or custodian who knowingly or intentionally inflicts, attempts to

---

[2]The father's parental rights were also terminated. According to the guardian and the DHHR, the children are placed with their maternal grandmother with a permanency plan of adoption in that home.

inflict or knowingly allows another person to inflict, physical injury . . . upon the child or another child in the home."

Further, we have held that

Because the purpose of an abuse and neglect case proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability.

Syl. Pt. 2, *W.Va. Dep't of Health & Human Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 475 S.E.2d 865 (1996). Petitioner did not testify on her own behalf or present any evidence at any hearing during the proceedings. Based on this evidence, the circuit court did not err in adjudicating petitioner as an abusing parent.

Petitioner also argues that the circuit court erred in terminating her parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

We have also held that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Petitioner failed to acknowledge the issues of abuse in the home and, therefore, the issues are untreatable and offering services would be futile. Additionally, petitioner remained in a relationship with the father, which also prevented her from resolving the issues of abuse and neglect. The circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon such findings. Accordingly, we find no error in the circuit court's decision to terminate petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 31, 2017, order is hereby affirmed.

4

Affirmed.

**ISSUED**:  February 23, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker